UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TINA BACHMAN, INFANT ONE, and
INFANT TWO,

                         Plaintiffs,

      v.

TOWN OF GREECE,

                     Defendant.
_____

**DECISION AND ORDER**

6:25-CV-06086 EAW

## INTRODUCTION

Plaintiffs Tina Bachman ("Bachman") and her minor children (Infant One and Infant Two) (collectively "Plaintiffs") commenced an action under 42 U.S.C. § 1983 against defendant Town of Greece ("Town" or "Defendant") on February 7, 2025, alleging violations of their rights under the First, Fourth, and Fourteenth Amendments. (Dkt. 1).

Pending before the Court is Defendant's motion to dismiss Plaintiffs' amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. 10). For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

The instant facts are taken from Plaintiffs' amended complaint. (Dkt. 9). As required at this stage of the proceedings, Plaintiffs' well-pleaded factual allegations are taken as true.

William Reilich ("Reilich") and Michelle Marini ("Marini") are the former Supervisor and Deputy Supervisor of the Town, respectively. Bachman is a part-time house

cleaner who, in September 2022, began cleaning a house in Penfield, New York, that was owned by Marini's daughter.  (*Id.* at ¶¶ 21-22).  Bachman later learned that Town officials were being investigated for misconduct, which included an investigation into renovations at the Penfield house.  (*Id.* at ¶¶ 27-28).  The investigation included an alleged "pay-to-play" scheme in which contractors employed by the Town were awarded work only if they agreed to perform personal services for Town officials.  (*Id.* at ¶ 31).  Because of her position cleaning the Penfield house, Bachman understood that a vendor employed by the Town was required to buy and install a heating system in the house without compensation. (*Id.* at ¶ 30).

Bachman's husband, Matthew Bachman ("Mr. Bachman"), served as an officer in the Town of Greece Police Department ("GPD") for 17 years.  (*Id.* at ¶ 24).  Bachman told her husband information about the renovations that she observed in the Penfield house. (*Id.* at ¶ 33).  Mr. Bachman then communicated that information to law enforcement.  (*Id.* at ¶ 34).  Town officials learned about the Bachmans' communications and believed that they were assisting in the investigation.  (*Id.* at ¶ 35).

On October 27, 2023, Cass & Morales Investigative Services, LLC ("Cass & Morales") entered into an Investigative Servies Retainer Agreement with Bolaños Lowe PLLC in the firm's capacity as legal counsel to the Town.  (*Id.* at ¶¶ 47-48).  Karlee Bolaños reported directly to Reilich in his capacity as Town Supervisor.  (*Id.* at ¶ 63).  On that same date, Cass & Morales, under the direction of Reilich, placed a GPS tracker on the Bachmans' personal vehicle.  (*Id.* at ¶¶ 46, 63).  At the time, Mr. Bachman was on forced medical leave after being injured in a physical altercation while performing his job

responsibilities.  (*Id.* at ¶¶ 44-46).  Cass & Morales opened a file entitled "Workers Comp Case M. Bachman."  (*Id.* at ¶ 50).

On January 3, 2023,[1] Cass & Morales spent four hours replacing the GPS tracking device on the Bachmans' personal vehicle.  (*Id.* at ¶ 56).  Afterward, Jennifer Morales had a telephone conference with GPD Chief Michael Wood ("Wood"), in which, upon information and belief, she relayed to Wood that the tracker had been installed.  (*Id.* at ¶ 57).

Cass & Morales, under the direction of Wood, placed the Bachman family under "around the clock surveillance."  (*Id.* at ¶ 61).  The Bachmans also had their vehicle followed by employees of Cass & Morales.  (*Id.* at ¶ 70).  GPD Deputy Chief Aaron Springer ("Springer") interviewed people with whom the Bachmans interacted regularly, including neighbors, friends, family, and Bachman's former employer, to ask questions about Bachman's housekeeping business and marriage.  (*Id.* at ¶¶ 58, 65-66).  Springer told one or more of those people that the Bachmans were under criminal investigation.  (*Id.* at ¶ 59).

On February 7, 2025, Plaintiffs filed the original complaint.  (*Id.* at ¶ 76; *see* Dkt. 1).  Within weeks, Wood filed formal disciplinary charges against Mr. Bachman.  (*Id.* at ¶ 78).  Mr. Bachman was never afforded a due process hearing under GPD policy.  (*Id.* at ¶¶ 79-80).  Wood publicly released information about the disciplinary charges and

---

[1]    Although the amended complaint alleges that the replacement of the GPS tracking device occurred in early 2023 (Dkt. 9 at ¶ 56), this is likely a typographical error and based on the other allegations in the amended complaint, it allegedly occurred in early 2024.

informed news outlets that he would be making a criminal referral for Mr. Bachman. (*Id.* at ¶¶ 82-83). The Town then ceased reimbursing Mr. Bachman's necessary medical expenses in connection with his workers' compensation claim. (*Id.* at ¶ 86).

On May 6, 2025, Plaintiffs filed an amended complaint.[2] (Dkt. 9). Plaintiffs' amended complaint sets forth four causes of action pursuant to 42 U.S.C. § 1983: (1) retaliation under the First and Fourteenth Amendments; (2) unlawful search and seizure under the Fourth Amendment; (3) an equal protection claim under the Fourteenth Amendment; and (4) a substantive due process claim under the Fourteenth Amendment.

Defendant filed a motion to dismiss the amended complaint on May 20, 2025. (Dkt. 10). Plaintiffs' response was filed on June 11, 2025 (Dkt. 12), and Defendant's reply was filed on June 18, 2025 (Dkt. 13).

## DISCUSSION

### I.    Legal Standards

#### A.    Rule 12(b)(1)

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation and citation omitted). "Standing is a federal jurisdictional

---

[2]    Defendant moved to dismiss Plaintiffs' initial complaint on April 7, 2025. (Dkt. 6). The Court issued a Text Order allowing Plaintiffs to elect to file an amended complaint in response (Dkt. 7), which they did (Dkt. 9), thus mooting the initial motion to dismiss (Dkt. 11).

question 'determining the power of the court to entertain the suit.' '[A] plaintiff must demonstrate standing for each claim and form of relief sought.'" *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (alteration in original) (citations omitted).

When standing is challenged on the basis of the pleadings, a court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Carver*, 621 F.3d at 225 (quoting *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008)). Thus, when a Rule 12(b)(1) motion is facial, i.e., based solely on the pleadings, a plaintiff has no evidentiary burden and the "task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (alterations in original) (citation omitted); *see also Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (when a standing challenge is facial, a plaintiff has no evidentiary burden, "for both parties can be said to rely solely on the facts as alleged" in the complaint).

"Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright,* 468 U.S. 737, 751 (1984) (emphasis added), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118 (2014). "A party must assert his own legal rights and interests, and cannot rest his claim to relief on the legal

rights or interests of third parties." *In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 58 (2d Cir. 2013) (quotation omitted).

"To satisfy the requirements of Article III standing, plaintiffs must demonstrate '(1) [an] injury-in-fact, which is a concrete and particularized harm to a legally protected interest; (2) causation in the form of a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief.'" *Hu v. City of N.Y.*, 927 F.3d 81, 89 (2d Cir. 2019) (quoting *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 257 (2d Cir. 2013)) (alteration in original).

"Where, as here, the defendant moves for dismissal under Rule 12(b)(1), Fed. R.Civ. P., as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir. 1990) (quotation omitted); *see also Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd* 496 F. App'x 131 (2d Cir. 2012) ("When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds such as Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must consider the Rule 12(b)(1) motion first."). "A court faced with a motion to dismiss . . . must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Sikhs for Justice Inc. v. Indian Nat'l Cong. Party*, 17 F. Supp.

3d 334, 338 (S.D.N.Y 2014) (quotation omitted).  In other words, if a court lacks subject matter jurisdiction, it cannot reach the merits of the case.

### B.  Rule 12(b)(6)

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).  "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II.    First Amendment—First Cause of Action

Plaintiffs' first cause of action is a First Amendment retaliation claim premised on two allegations: one, that Bachman's report of the renovations in the Penfield house caused Defendant to engage in a pattern of harassment against the Bachman family, including placing a GPS tracking device on the family vehicle, interviewing the Bachmans' neighbors, friends, and family, interrogating Bachman's former employer, informing those people that the Bachmans were under a criminal investigation, surveilling the Bachman home, and having the Bachman vehicle followed by private investigators (Dkt. 9 at ¶¶ 87-88, 90, 95-99, 109); and two, that after Plaintiffs commenced this lawsuit, Defendant took retaliatory action against Mr. Bachman in his capacity as an employee of GPD by opening an investigation into Mr. Bachman, filing disciplinary charges against him, making a criminal referral, publicly releasing information about the disciplinary charges, and ceasing to reimburse his medical expenses in connection with his workers' compensation claim (*id.* at ¶¶ 87-88, 91, 94, 103, 104-105).  The Court will address these allegations in turn.

### A. Speech Regarding Renovations

To state a First Amendment retaliation claim in the context of a private citizen, a plaintiff must plausibly allege: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

Although historically there has been "tension" in this circuit regarding what injury is needed to establish a plausible claim for First Amendment retaliation, *see, e.g., Gill v.*

*Pidlypchak*, 389 F.3d 379, 381-84 (2d Cir. 2004), the Second Circuit clarified in *Dorsett* that silencing of the plaintiff's speech is not the only sufficient injury, 732 F.3d at 160 ("Chilled speech is not the *sine qua non* of a First Amendment claim."). Rather, "[a] plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Id.* So long as a plaintiff can plausibly demonstrate that "defendant's actions caused him some injury," including "[v]arious non-speech related harms," the plaintiff has satisfied the injury requirement to withstand a motion to dismiss. *Id.* Although not definitively resolved by the Second Circuit, other courts have concluded that injury "based on embarrassment, humiliation, and emotional distress" is enough to allege injury in the First Amendment retaliation context. *Doe v. City of New York*, No. 18-CV-670 (ARR) (JO), 2018 WL 3824133, at *13 (E.D.N.Y. Aug. 9, 2018) (citations omitted); *see Stridiron v. Newburgh Enlarged City Sch. Dist.*, No. 20-CV-6823 (CS), 2023 WL 5586680, at *9 (S.D.N.Y. Aug. 29, 2023) ("It is an unsettled question in this Circuit whether emotional damages are sufficient, standing alone, to give rise to a First Amendment retaliation claim. Some district judges in this Circuit have answered that question in the affirmative, holding that allegations as to 'severe and extreme emotional distress . . . [are] sufficient to plausibly allege a claim of First Amendment retaliation.'" (citations omitted)); *see also Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 161 (2d Cir. 2003) ("The Supreme Court has long recognized that an injury to reputation will satisfy the injury element of standing."); *Bernheim v. Litt*, 79 F.3d 318, 325-26 (2d Cir. 1996) ("It is a basic principle of . . . civil rights law . . . that compensable injuries may include not only monetary losses such as out-

of-pocket expenses but also injuries such as . . . mental anguish." (quoting *Henry v. Gross*, 803 F.2d 757, 768 (2d Cir. 1986)).

Defendant challenges whether Plaintiffs have Article III standing to bring the First Amendment retaliation claim.  (Dkt. 10-3 at 11-16; Dkt. 13 at 5-8).  Defendant claims that because Plaintiffs have not pleaded that their speech was effectively chilled by Defendant's actions or that Plaintiffs suffered some other concrete harm, they have failed to establish injury-in-fact.  (*Id.*).  The Court disagrees.  "[S]tanding is no issue whenever the plaintiff has clearly alleged a *concrete* harm independent of First Amendment chilling."  *Zherka v. Amicone*, 634 F.3d 642, 646 (2d Cir. 2011) (quoting *Gill*, 389 F.3d at 383 (2d Cir. 2004) ("[S]tanding . . . is only a problem where no harm independent of the First Amendment is alleged.  For there, the only injury is the chilling itself.")).  Here, Plaintiffs allege that they were injured because of the Town's retaliatory actions.  Bachman alleges that because of the Town's harassment committed in retribution for her disclosures, she lives in constant fear that something will happen to her or a member of her family, and believes her home and vehicle are under constant surveillance, causing severe emotional distress.  (*Id.* at ¶¶ 88, 109).  She further alleges that the Town's interrogation of the people in her life, including her former employer, and the Town's statements that the Bachmans were under criminal investigation, have caused her difficulty in sustaining employment.  (*Id.*)  Infant One and Infant Two similarly allege that they have suffered psychological injury; since they learned of the GPS tracking device that was allegedly installed on the family vehicle, they have become withdrawn and less trusting and are showing signs of stress and anxiety.  (*Id.*).  Based on this, the Court concludes that each Plaintiff has plausibly pleaded

economic, reputational, and/or emotional harm sufficient to establish injury-in-fact for standing purposes.

On the merits, Defendant contends that the amended complaint fails to plausibly allege a First Amendment retaliation claim premised on Bachman's communications about renovations in the Penfield house. (Dkt. 10-3 at 20-21; Dkt. 13 at 10-11). Defendant argues that Bachman did not plead facts supporting the plausible inference that the Town's actions effectively chilled her speech, and that she failed to demonstrate that any actions by the Town were motivated or substantially caused by Bachman exercising any right. (*Id.*) Moreover, Defendant submits that because there are "no allegations that the children engaged in any protected speech," Infant One and Infant Two have not stated a viable claim. (Dkt. 10-3 at 14).

The Court agrees that Infant One and Infant Two have failed to allege that they engaged in any First Amendment speech—or any speech at all—for the purpose of this claim. The sole communication that gives rise to this First Amendment retaliation claim based on the harassment and other acts directed toward Plaintiffs, is Bachman's alleged disclosure relating to the renovations in the Penfield house. (Dkt. 9 at ¶ 95). But that was Bachman's speech. Without an allegation that Infant One and Two engaged in protected speech, they cannot assert a viable First Amendment claim.

As for Bachman, the Court rejects Defendant's arguments that she has failed to allege concrete harm under *Dorsett*, for the reasons discussed above concerning standing. Bachman has stated two types of injury—both economic damages in the form of difficulty in sustaining employment as a result of reputational harm caused by the Town's

interrogation of her former employer and the Town's statements that the Bachmans were under criminal investigation (Dkt. 9 at ¶ 88), and severe emotional distress (*id*.).

The Court similarly rejects Defendant's arguments that the alleged causal connection is insufficiently alleged. The amended complaint alleges that Town officials knew that Bachman shared information about the renovations in the Penfield house, and that Town officials believed that the Bachmans were assisting in the investigation of corruption in the Town government. (Dkt. 9 at ¶¶ 33-35). That allegation supports an inference that the Town placed the Bachman family under surveillance and investigation as a result of Bachman's communications. *See*, *e.g.*, *Tretola v. D'Amico,* No. 13-CV-5705 JS AKT, 2014 WL 2957523, at *5 (E.D.N.Y. July 1, 2014) (allegation that defendants "essentially began an investigation and a campaign to target [plaintiffs] as a form of retribution" for plaintiffs' speech was sufficient to plausibly allege causation for First Amendment retaliation). Bachman has therefore plausibly established a causal connection to support her retaliation claim.

### B.  Commencement of Lawsuit

Plaintiffs also assert a cause of action for First Amendment retaliation premised on the Town's actions in response to the filing of this lawsuit. (Dkt. 9 at ¶¶ 87-88, 91, 94, 103, 104-105). Defendant contends that Plaintiffs lack standing because they have not themselves experienced injury caused by the Town and are instead seeking legal recourse on behalf of Mr. Bachman. (Dkt. 10-3 at 11-16; Dkt. 13 at 5-8).

Plaintiffs do not appear to contest that Mr. Bachman is the only person who has experienced harm stemming from the commencement of this lawsuit. (Dkt. 12 at 16-18).

Instead, Plaintiffs rely on the Second Circuit's decision in *Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999) and suggest that under that precedent, injury to Mr. Bachman, as Bachman's spouse and the father of Infant One and Two, establishes injury-in-fact. (*Id.* at 16). The Court is not persuaded by this argument.

In *Adler*, the Second Circuit considered whether a public employee had a cause of action under the First Amendment arising from his retaliatory discharge after his wife sued state officials. The Court determined that the husband could pursue a claim based on retaliatory action taken against him because of his wife's speech, but that "a spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association," not a violation of his freedom of speech. *Adler*, 185 F.3d at 44; *see Trask v. Town of Alma*, No. 1:19-cv-01192, 2020 WL 6390091, at *5 (W.D.N.Y. Oct. 30, 2020) (considering whether plaintiff pleaded a claim of violation of the right to intimate association when plaintiff was allegedly terminated for wife's conduct); *Talley v. Brentwood Union Free Sch. Dist.*, No. 08 CV 790(DRH)(ETB), 2012 WL 3841396, at *7-8 (E.D.N.Y. Sept. 5, 2012) (First Amendment intimate association analysis applied to daughter's claim that she was not hired for a teaching position because of animus toward her father's conduct as school board member); *Garten v. Hochman*, No. 08 Civ. 9425(PGG), 2010 WL 2465479, at *3 (S.D.N.Y. June 16, 2010) ("Courts in this circuit have acknowledged that a First Amendment right of intimate association is implicated where a plaintiff is allegedly retaliated against for the First Amendment activities of a family member." (internal quotations and citations omitted)).

- 13 -

Thus, while *Adler* recognizes the right of a plaintiff to pursue claims based on allegedly retaliatory acts taken based on the speech of an intimate family member, it does not help Plaintiffs here.  Plaintiffs are not alleging that they have been retaliated against because of Mr. Bachman's speech—rather, they are alleging that Mr. Bachman has been retaliated against because of their speech commencing this lawsuit.  But it is Plaintiffs—not Mr. Bachman—who have brought this lawsuit and among other things, must plausibly allege an injury-in-fact to establish standing.

Plaintiffs cannot establish standing to pursue a First Amendment retaliation claim based on the commencement of this lawsuit.  The injury asserted by Plaintiffs is that the Town retaliated by investigating Mr. Bachman, entering disciplinary charges against him, recommending a criminal referral, publicly releasing that information, and refusing to reimburse Mr. Bachman's medical expenses under his workers' compensation claim.  (Dkt. 9 at ¶¶ 87-88, 104).  None of those allegations support an inference of harm to Plaintiffs themselves.   Because those injuries have not affected Plaintiffs "in a personal and individual way," *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)), Plaintiffs have failed to demonstrate that any injury is sufficiently particularized.  Accordingly, Plaintiffs cannot establish standing to pursue a First Amendment retaliation claim based on commencement of this lawsuit.

## III.    <u>Standing as to Remaining Causes of Action</u>

On Plaintiffs' second, third, and fourth causes of action, Defendant contends that the amended complaint lacks allegations of concrete harm suffered by Plaintiffs because of any actions by the Town.  (Dkt. 10-3 at 15-16).  The Town submits that absent concrete

injury directed at or experienced by Plaintiffs, Plaintiffs cannot use a general claim of emotional distress to establish standing. *Id.*

Although general allegations of emotional distress may be insufficient to amount to a concrete constitutional injury, "great stress, mental anguish, anxiety, and distress" are the sort of harm that may support Article III standing. *Maddox v. Bank of N.Y. Mellon Trust Co., N.A.*, 19 F.4th 58, 65 (2d Cir. 2021) (first citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 n. 7 (2021) ("[A] plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm."); and then citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 265 (2d Cir. 2006) ("[A]esthetic, emotional or psychological harms also suffice for standing purposes.")). Plaintiffs "must plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief," and "[a] perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing." *Id.* at 65-66 (quoting *Harry v. Total Gas & Power North Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018)).

That said, the Court does not agree with Defendant's assertion that the amended complaint fails to contain specific allegations of actions taken by the Town that were directly aimed at or experienced by Plaintiffs that resulted in injury to Plaintiffs. Plaintiffs allege that the Town violated their rights under the Fourth Amendment, the Equal Protection Clause, and Substantive Due Process by subjecting them to harassment and illegal surveillance. Plaintiffs further allege that these actions by the Town caused them severe emotional distress, including anxiety that they are being watched and that their home

and vehicles are under surveillance, fear that the Town will physically harm someone in their family, and stress over whether Mr. Bachman will lose his job with the Town as a result of the surveillance. (Dkt. 9 at ¶ 88). Furthermore, the children have become withdrawn and less trusting, and are showing signs of stress and anxiety. (*Id.*)

The Court finds these allegations more than a "perfunctory allegation of emotional distress," *Denney*, 443 F.3d at 265, and sufficient for purposes of standing for the second, third and fourth causes of action.

## IV.   Municipal Liability

The Town moves to dismiss all of Plaintiffs' § 1983 claims pursuant to *Monell v. New York City Dep't Soc. Servs.*, 436 U.S. 658, 690 (1978). The Town contends that Plaintiffs have failed to identify any custom, policy, or final policymaker responsible for the alleged actions that violated Plaintiffs' constitutional rights. (Dkt. 10-3 at 16-20; Dkt. 13 at 8-10).

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).

"[T]o establish municipal liability under § 1983, a plaintiff must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). "[T]o hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). "[O]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. To survive a motion to dismiss, the plaintiff "cannot merely allege the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Triano v. Town of Harrison, N.Y.*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (cleaned up). A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted).

- 17 -

As relevant here, "[a] municipality may . . . be liable for even a single unconstitutional act of an official who has final policy-making authority." *Taylor v. City of New York (Dep't of Sanitation),* No. 17 CV 1424-LTS-SDA, 2019 WL 3936980, at *5 (S.D.N.Y. Aug. 20, 2019). "If an official's decision was, at the time it was made, for practical or legal reasons the municipality's final decision, then they are a final policymaker." *Id.* (cleaned up); *see also Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983) ("A single unlawful discharge, if ordered by a person whose edicts or acts may fairly be said to represent official policy, may support an action against the municipal corporation. . . . Where an official has final authority over significant matters involving the exercise of discretion, the choices he makes represent government policy." (cleaned up)); *Barzilay v. City of New York*, 610 F. Supp. 3d 544, 618 (S.D.N.Y. 2022) (to determine whether an individual has the requisite policy-making authority, "a court must consider 'proof of the official's scope of employment and his role within the municipal or corporate organization.'" (citation omitted)). "Mayors may be treated as policy-makers without proof of their specific powers and responsibilities. Lesser officials, however, cannot similarly be presumed to embody plenary municipal power." *Donovan v. Norwich City Sch. Dist.*, No. 3:19-CV-1638, 2022 WL 623904, at *11 (N.D.N.Y. Mar. 3, 2022) (quoting *Rookard*, 710 F.2d at 45, n. 4). At the pleading stage, a plaintiff must allege sufficient facts to support a fair inference for such a conclusion. *Taylor*, 2019 WL 3936980, at *5; *Morizio v. Town of Oyster Bay*, No. CV 14-1241 (LDW) (SIL), 2015 WL 13721649, at *7 (E.D.N.Y. Apr. 24, 2015) ("Notably, [a]t the pleadings stage, it is sufficient for the

complaint to allege facts suggesting that Defendants may be determined to have final policymaking authority as a matter of law." (cleaned up)).

Plaintiffs have alleged sufficient facts to support a fair inference that Reilich, in his capacity as Town Supervisor, and Wood, in his capacity as GPD Chief, were policymakers with final authority over the decision to hire Cass & Morales to investigate the Bachman family and ultimately place a GPS tracking device on the Bachman family vehicle. Plaintiffs allege that an "Investigative Services Retainer Agreement" was entered into between Cass & Morales and Bolaños Lowe PLLC, in the firm's capacity as legal counsel to the Town. (Dkt. 9 at ¶¶ 47-48). Plaintiffs further allege that Karlee Bolaños reported directly to Reilich and acted under his authority when she retained Cass & Morales to investigate the Bachman family and place a GPS device on their vehicle. (*Id.* at ¶ 63). Additionally, Plaintiffs allege that Jennifer Morales had a telephone call with Wood after placing the GPS device on the Bachman family car in which she communicated to Wood that the device had been installed, and that Wood issued press releases in which he asserted that he was in charge of the investigation of Mr. Bachman. (*Id.* at ¶¶ 57, 62). These facts plausibly allege that retaining Cass & Morales to investigate the Bachman family, and the actions taken by Jennifer Morales pursuant to that agreement, resulted from decisions made by policymakers with final authority. Thus, the Town's motion to dismiss Plaintiffs' § 1983 claims on the theory that Plaintiffs failed to plausibly establish the Town's liability under *Monell* is denied.

## V.    Fourth Amendment—Second Cause of Action

Plaintiffs allege that Defendant violated their Fourth Amendment rights by installing a GPS tracking device on the family vehicle and subjecting them to 24/7 monitoring. (Dkt. 9 at ¶¶ 113-28). Defendant seeks to dismiss this claim under *Cunningham v. New York State Dep't of Labor*, 21 N.Y.3d 515 (2013), in which the New York Court of Appeals determined that a public employer's installation of a GPS tracking device on an employee's vehicle fell within the "workplace" exception to the warrant requirement recognized in *O'Connor v. Ortega*, 480 U.S. 709 (1987). (Dkt. 10-3 at 22; Dkt. 13 at 11-12). According to Defendant, because the alleged installation of a GPS tracking device on the Bachmans' car did not require a warrant under the workplace exception, and Plaintiffs do not allege that the search was unreasonable, Plaintiffs' claim should be dismissed. (*Id.*)

"The Fourth Amendment prohibits unreasonable searches and seizures." *United States v. Amerson*, 483 F.3d 73, 77 (2d Cir. 2007). "A 'search' occurs for purposes of the Fourth Amendment if the police seek information by intruding on a person's reasonable expectation of privacy or by means of trespassing upon one's person, house, papers, or effects." *United States v. Smith*, 967 F.3d 198, 205 (2d Cir. 2020). Therefore, warrantless searches are permissible only in certain circumstances and "[i]n the usual case, a warrantless search . . . is 'presumptively unreasonable.'" *Alexander v. City of Syracuse*, 573 F. Supp. 3d 711, 730 (N.D.N.Y. 2021) (citing *Harris v. O'Hare*, 770 F.3d 224, 231 (2d Cir. 2014)).

Defendant's reliance on *Cunningham* fails for at least two reasons. First, the New York Court of Appeals held, based in part on the exception for the warrant requirement for

work-related searches recognized by the Supreme Court in *O'Connor*, that "when an employee chooses to use his car during the business day, GPS tracking of the car may be considered a workplace search." 21 N.Y.3d at 521. But here, it is far from clear that a warrant was <u>not</u> required for installation of a GPS tracking device on the Bachman family vehicle. The amended complaint alleges that the GPS tracking device was installed after Mr. Bachman was placed on medical leave for being injured on the job, meaning that he was not actively reporting to work at the time that the tracking supposedly began. (Dkt. 9 at ¶¶ 44-46). *Cunningham* does not definitively establish that the workplace exception applies under those facts; rather, *Cunningham* specifically applied the exception to the search of an employee's car who "was required to report his arrival and departure time to his employer," which "surely diminished any expectation he might have had that the location of his car during the hours he claimed to be at work was no one's concern but his." 21 N.Y.3d at 521. The same cannot be said for an employee who was specifically instructed *not* to report to work.

Second, even if a warrant was not required, Defendant overlooks that the court in *Cunningham* determined that the use of the tracking device constituted an illegal search. 21 N.Y.3d at 522. In other words, just because a warrant is not required does not mean that the scope of a search is reasonable, and contrary to Defendant's claims, Plaintiffs specifically allege that the search here was unreasonable. (Dkt. 9 at ¶ 124 ("At the time of the events in question, the law was clear that 24/7 monitoring of members of the Bachman family was excessively intrusive, unreasonable and a constitutional violation.")). In *Cunningham*, the court held that because the device "examined much activity with which

the [defendant] had no legitimate concern – i.e., it tracked [plaintiff] on all evenings, on all weekends and on vacation," conducting "seven day, 24-hour surveillance for a full month," the search was "excessively intrusive" and therefore unreasonable. (*Id.*).  Almost identical allegations are pleaded in the amended complaint.  (Dkt. 9 at ¶¶ 116-17).

Therefore, the Court concludes that Plaintiffs have plausibly alleged that the search violated the Fourth Amendment, and the motion to dismiss is denied.

## VI.    Equal Protection Clause—Third Cause of Action

Plaintiffs' third cause of action is a claim under the Equal Protection Clause. Defendant contends that Plaintiffs have failed to state a cause of action because the amended complaint contains no allegations that Plaintiffs are members of a protected class, nor does it provide examples of similarly situated individuals who were treated differently. (Dkt. 10-3 at 22-24; Dkt. 13 at 12-13).  Defendant further contends that Plaintiffs have not demonstrated the high level of similarity between themselves and the persons they compare themselves to, which is required to succeed on a "class of one" claim.  (Dkt. 10-3 at 23-24).

The Equal Protection Clause of the United States Constitution mandates equal protection under the law, and that similarly situated persons are treated equally.  "To establish an Equal Protection claim, a plaintiff must show that he was treated differently than other persons who were similarly situated and that such differential treatment was either without a rational basis (a class of one claim) or was motivated by an intent to discriminate on an impermissible basis (a selective enforcement claim)."  *Richard v.*

*Dignean*, No. 6:11-CV-06013 EAW, 2023 WL 2480585, at *4 (W.D.N.Y. Mar. 13, 2023) (cleaned up).

To prevail on a selective enforcement equal protection claim, "a plaintiff must prove that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Burton v. Salerno*, No. 3:20-CV-1926 (VAB), 2023 WL 184238, at *15 (D. Conn. Jan. 13, 2023) (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)). "A plaintiff generally must satisfy both elements to establish a claim of selective enforcement." *Carminucci v. Pennelle*, No. 18 CV 2936 (LMS), 2020 WL 4735172, at *22 (S.D.N.Y. Aug. 14, 2020) (quoting *LaTrieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999)).

Initially, Plaintiffs make clear, both in their amended complaint and opposition papers, that their equal protection cause of action is a selective enforcement claim. (Dkt. 9 at 21 ("Equal Protection/Selective Enforcement Claim Against Town of Greece"); Dkt. 12 at 21 ("The case at bar is not a 'class of one' claim.")). As such, insofar as Defendant contends that Plaintiffs have failed to state a "class of one" equal protection claim, there is no dispute on that point as Plaintiffs concede they are not pursuing such a claim.

In order to satisfy the first prong of a selective enforcement claim, Plaintiffs must identify comparators with whom they are "similarly situated in all material respects." *Hu*, 927 F.3d at 96 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). Although the standard does not require Plaintiffs and the comparators to be identical, their

- 23 -

"circumstances must bear a reasonably close resemblance." *Id.* (quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)).

Plaintiffs have not met that burden here. The sole allegation of comparators in the amended complaint is one paragraph that alleges "[s]imilarly situated individuals who are not whistleblowers or who otherwise do not criticize the Town are not subject to surveillance and retaliation." (Dkt. 9 at ¶ 133). That conclusory allegation is not enough to identify who the alleged comparators are, let alone to establish similarities between Plaintiffs and the comparators. *See Servidio Landscaping, LLC v. City of Stamford*, No. 3:19-CV-01473 (KAD), 2020 WL 7246441, at *4 (D. Conn. Dec. 9, 2020) (dismissing selective enforcement claim because plaintiffs "d[id] not identify a single specific comparator, individual or corporation that is allegedly similarly situated to the [p]laintiffs"). The most generous reading of Plaintiffs' allegation is that the proper comparators are residents of the Town who do not engage in whistleblowing activities, but that bald assertion is equally insufficient because it fails to plausibly allege that the residents are similar to Plaintiffs "in all material respects" beyond being Town residents. Although courts are "cautioned against deciding whether two comparators are similarly situated on a motion to dismiss," *Hu*, 927 F.3d at 97, a general allegation that Plaintiffs were treated differently from those similarly situated is not enough to survive a motion to dismiss, *Rushton v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010). To allow an equal protection claim to proceed based on the vague, wholly conclusory allegation of similarly situated comparators like the one in Plaintiffs' amended complaint, would strip away the plausibility standard required by *Iqbal* and *Twombly*. Because

- 24 -

Plaintiffs have failed to provide more than a general allegation of comparators, their equal protection claim is dismissed.[3]

## VII. **Substantive Due Process—Fourth Cause of Action**

Plaintiffs' final cause of action is a substantive due process claim. Plaintiffs assert that Defendant "began a deliberate and conscience-shocking campaign of retaliati[on]" against Plaintiffs for their association with the investigation against the Town and commencing a related lawsuit. (Dkt. 9 at ¶ at 146).

Defendant contends that the claim warrants dismissal because the amended complaint fails to identify a fundamental right that Defendant infringed, nor does it plausibly allege any action by Defendant that could reasonably be considered "conscience-shocking." (Dkt. 10-3 at 24-26). More persuasively, Defendant contends that Plaintiffs' substantive due process claim is subsumed in more particularized constitutional claims. (Dkt. 10-3 at 25; Dkt. 13 at 13-14).

---

[3]    Although not raised by Defendant, the equal protection claim also fails because it is duplicative of the First Amendment retaliation cause of action. "Courts in the Second Circuit have dismissed equal-protection claims that merely restate First Amendment retaliation claims." *Salvana v. New York State Dep't of Corr. and Cmty. Supervision*, 621 F. Supp. 3d 287, 313 (N.D.N.Y. 2022) (quoting *Best Payphones, Inc. v. Dobrin*, 410 F. Supp. 3d 457, 484 (E.D.N.Y. 2019) (dismissing an equal protection claim "based on . . . protected First Amendment activity" as duplicative: "courts should not unnecessarily stretch sections of the Constitution to reach wrongs already covered by other sections")). Here, the equal protection claim is based on the assertion that "Defendant's true reason for harassing, surveilling and investigating the Bachman family was animus and ill will arising from their desire to retaliate and silence Tina Bachman." (Dkt. 9 at ¶ 135). Furthermore, Plaintiffs state in their opposition papers that "the selective treatment was motivated by an intention to punish or inhibit the exercise of constitutional rights." (Dkt. 12 at 21). Thus, Defendant's alleged retaliation in response to protected speech is the basis for the alleged selective treatment, rendering the equal protection claim duplicative of any First Amendment retaliation claim.

"Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised.'" *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (cleaned up). "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Okin v. Village of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998)).

That said, "[w]here a particular [constitutional] Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *Schachtler Stone Prods. LLC v. Town of Marshall*, No. 6:21-CV-001100 (AMN/MJK), 2024 WL 4025862, at *13 (N.D.N.Y. Sept. 3, 2024) ("It is 'well established' that '[w]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process.'" (quoting *Hu*, 927 F.3d at 104)).

Here, Plaintiffs allege that Defendant's "conscience-shocking" behavior involves retaliating against them for engaging in protected speech by engaging in a campaign of harassment that included installing a GPS tracker on their family vehicle. But as Plaintiffs concede in opposition to the pending motion, this is the "same underlying conduct" that

serves as the basis for their claims based on the First and Fourth Amendment. (Dkt. 12 at 24). And as made clear above, Plaintiffs have stated plausible claims for violations of the First and Fourth Amendment. "[W]here a claim can be characterized as a violation of the Fourth Amendment, it should be analyzed as such, and not as a substantive due process claim." *Green-Page v. United States*, No. 1:20-CV-00837, 2024 WL 3584194, at *13 (W.D.N.Y. July 30, 2024) (quoting *Lauro v. Charles*, 219 F.3d 202, 208 (2d Cir. 2000)); *see Ovalle v. Suffolk Cnty.*, No. 21-CV-5371 (BMC), 2024 WL 3986720, at *4 (E.D.N.Y. Aug. 29, 2024) ("The Supreme Court disfavors relying on substantive due process where, as here, the Fourth Amendment affords protection."). The same is true for claims that allege a violation of the First Amendment.[4] *See Collins v. Putt*, 979 F.3d 128, 136 (2d Cir. 2020) (plaintiff's substantive due process claim subsumed by the alleged First Amendment violations); *see also Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) (same); *Brown v. Wagner*, No. 12-CV-736S, 2014 WL 234821, at *6 (W.D.N.Y. Jan. 22, 2014) ("Because the remaining claims sound in the First Amendment . . . [plaintiff's] substantive due process claim . . . must be dismissed.").

---

[4] This is true even though the Court has dismissed Infant One and Infant Two's claims for First Amendment retaliation. In other words, "whether a plaintiff may bring a substantive due process claim does not turn on the *success* of a claim alleging a violation of a more specific constitutional provision; it turns on whether another provision of the Constitution 'provides an explicit textual source of constitutional protection.'" *20 Dogwood LLC v. Village of Roslyn Harbor*, No. 23-930, 2024 WL 1597642, at *2 (2d Cir. Apr. 12, 2024) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see also Collins v. Putt*, 979 F.3d 128, 136 (2d Cir. 2020) (concluding substantive due process claim was subsumed by First Amendment claim, even after affirming the dismissal of the First Amendment claim).

"In other words, what would serve to raise [Defendant's] actions beyond the wrongful to the unconscionable and shocking are facts which, if proven, would constitute, in themselves, specific constitutional violations." *Velez*, 401 F.3d at 94. Under these circumstances, Plaintiffs' substantive due process claim is "subsumed in [their] more particularized allegations," and subject to dismissal. *Id.* For these reasons, Defendant's motion to dismiss Plaintiffs' substantive due process claim is granted.

## CONCLUSION

For the foregoing reasons, the Court grants the Town's motion to dismiss the First Amendment retaliation claim based on commencement of this lawsuit without prejudice pursuant to Rule 12(b)(1), and pursuant to Rule 12(b)(6) it grants the Town's motion to dismiss the Equal Protection and Substantive Due Process claims, and Infant One and Infant Two's claim for First Amendment retaliation based on Bachman's speech about the house renovations. The Town's motion is denied as to Bachman's First Amendment retaliation claim based on her speech about the house renovations and as to Plaintiffs' Fourth Amendment claim.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Judge

Dated: December 9, 2025
       Rochester, New York

- 28 -